**William Raymond KLINGELE,
Plaintiff–Appellant,**

v.

**Kenneth O. EIKENBERRY; Amos Reed;
Larry Kincheloe; Tana Wood; Mr.
Gleason; James Thatcher; Mr. McClean, Defendants–Appellees.**

No. 86–3767.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 2, 1988 *.

Decided June 13, 1988.

As Amended Aug. 4, 1988.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

`William R. Klingele, Walla Walla, Wash., for plaintiff-appellant.

Carolyn S. Gill, Asst. Atty. Gen., Dept. of Corrections, Olympia, Wash., for defendants-appellees.

Before FLETCHER and WIGGINS,[**] Circuit Judges, and GEORGE,[***] District Judge.

FLETCHER, Circuit Judge:

Appellant Klingele appeals a district court order granting summary judgment to appellees and dismissing his 42 U.S.C. §§ 1981, 1983, 1985 and 1988 claims. We reverse the dismissal of the § 1983 claims.

## FACTS

On several occasions between early June and late September of 1984, appellant William Klingele, an inmate in the Washington State Penitentiary at Walla Walla ("WSP"), was threatened by other inmates. Gary Isaacs and two other inmates attempted to extort money from Klingele and repeatedly threatened to harm him or have others harm his family. In July, Klingele advised custody unit supervisor McClean of the threats, said he feared for his safety, and asked to be transferred to the Medium Security Building ("MSB"). McClean told him that his custody level precluded placement in medium security, and that his only option was to enter the Protective Custody Unit ("PCU"). Klingele declined to move to PCU, though the parties disagree as to the reason. Appellees claim he did not wish to move because it would interfere with his programming; Klingele claims he knew he would not be free of danger even in PCU.

In late July, Klingele's mother called McClean and warned him that the deadline set by the extortionists was approaching. She called again in early August, after which Klingele was allowed to meet with two other prison officials. It is disputed whether Klingele told them his problems had been resolved or whether he said he was still fearful of the other inmates.

Klingele also claims to have written letters to four of the appellees. One appellee, WSP Superintendent Larry Kincheloe, denied receiving any communication from Klingele. Another, Associate Superintendent Mary Wood, informed Klingele that he could not be transferred to MSB. At no point did Klingele inform appellees of the names of the inmates he said were threatening him. On October 5, inmate Isaacs stabbed Klingele in the chest and right arm, puncturing Klingele's liver, diaphragm and right lung.

Klingele brought this action in district court in December 1984 under, inter alia, 42 U.S.C. §§ 1981, 1983, 1985(3) and 1988. He maintained that appellees had deprived him of his eighth and fourteenth amendment rights by negligently failing to protect him and by conspiring not to provide adequate protection. Among other allegations, Klingele argued that prison officials failed to follow standard operating procedures, failed to conduct as frequent and thorough cell searches as were required, and refused unreasonably to transfer him to MSB.

Nine months after filing, in September 1985, Klingele submitted a "Motion for Ap-

---

[**] Charles E. Wiggins, United States Circuit Judge, U.S. Court of Appeals for the Ninth Circuit, was drawn to replace Judge Anderson, who was on the original panel but died before this opinion was filed.

[***] Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

pointment of Counsel and/or Motion for Summary Judgment and Answer." In November, appellees filed an opposition to appellant's motion and a Cross Motion for Summary Judgment, along with six affidavits. On December 24, appellant submitted a motion for discovery by depositions to be taken of Isaacs and guard Slaybaugh, who appellant alleged had conspired with Isaacs. On January 14, 1986, appellant filed a "Motion for Reconsideration of Court's Order Denying Plaintiff's Motion for Appointment of Counsel, or, in the alternative, a Motion for Summary Judgment and Answer." Three weeks later, appellees supplemented their Cross Motion by sending the court a copy of *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), a recently decided case relevant to some of appellant's claims. On March 10, the court entered summary judgment in favor of appellees, denied Klingele's motion for summary judgment, declared his pending discovery motions moot, and dismissed his claims with prejudice. Klingele timely appealed.

## DISCUSSION

### A. *Notice of Rule 56*

▇ After appellees filed their Cross Motion for Summary Judgment supported by affidavits, the court did not advise appellant that he had to submit responsive evidence to ward off summary judgment under Fed.R.Civ.P. 56(e). Klingele argues that as a pro se prisoner litigant, he should have been told what he needed to do, as required by *Hudson v. Hardy*, 412 F.2d 1091 (D.C.Cir.1968). In *Hudson*, the D.C. Circuit held that before entering summary judgment against a pro se prisoner, the district court, "as a bare minimum, should have provided him with fair notice of the requirements of the summary judgment rule." *Id.* at 1094.

This circuit has approved the *Hudson* rule and discussed the particular difficulties faced by incarcerated pro per litigants in *Jacobsen v. Filler*, 790 F.2d 1362, 1364 & n. 4 (9th Cir.1986) (declining to extend rule to pro se nonprisoners).

Appellees concede that the *Hudson* rule applies, but urge us to decline a bright-line application to all pro per prisoners in favor of a particularized analysis of each prisoner litigant's legal sophistication. They argue that "progress has been such that, in many instances, prisoner pro se litigants actually are in a better position to defend themselves than nonprisoner pro se litigants." Appellees point somewhat unrealistically to the prison law libraries available to prisoners as part of the advantage to prisoners. Rather than simply giving each prisoner notice, appellees suggest we should advise only those whom the court determines do not understand what is required.

In Klingele's case appellees' contention apparently is that he actually knew what was required of him, not just that he was intelligent and well-educated enough to find out on his own. They point to the fact that shortly after they filed their cross motion, Klingele filed his discovery motions. This, they conclude, "indicate[s] that he was well aware of the need to gather evidence with which to rebut defendants' Cross Motion," and it was therefore reasonable for the court to conclude that appellant did not need to be advised. The quality and content of his papers, however, suggests that appellant had no more than a dim understanding of simple legal concepts and procedures. In three separate motions, appellant requested the court to appoint counsel for him, which suggests he was aware of his inadequacies (each motion was denied).

The district court did not explain its failure to advise Klingele of the requirements of Rule 56. If it thought Klingele was aware of the Rules' requirements and knew how to comply it was clearly erroneous. If the district court relied simply on the fact that Klingele had the time and ability to figure out what he should do to comply with Rule 56 requirements, it erred in not advising Klingele of the Rule's requirements. We decline appellees' invitation to erode the *Hudson* rule by allowing district courts to avoid giving the required advice based on a determination that a prisoner has the requisite sophistication in legal matters. District courts are obligat-

ed to advise prisoner pro per litigants of Rule 56 requirements.

### B. *Klingele's Pending Motions*

■ Appellant argues that the district court erred in entering summary judgment against him while his discovery motions were still pending. We review discovery rulings for abuse of discretion. *Hatch v. Reliance Ins.*, 758 F.2d 409, 416 (9th Cir. 1985).

■ We generally disfavor summary judgment where relevant evidence remains to be discovered. *Taylor v. Sentry Life Ins.*, 729 F.2d 652, 656 (9th Cir.1984) (per curiam). The burden is on the nonmoving party, however, to show what material facts would be discovered that would preclude summary judgment. *Hall v. Hawaii*, 791 F.2d 759, 761 (9th Cir.1986). If further discovery could not elicit evidence that would raise genuine issues of material fact, summary judgment would be appropriate. *Taylor*, 729 F.2d at 656.

Appellant wanted the following: (1) all documents relied on by appellees to establish the adequacy of protection afforded appellant; (2) a deposition of Isaacs; (3) a deposition of Slaybaugh, whom appellant alleged either conspired in the stabbing or did nothing to stop it; (4) policy statements or regulations concerning the security procedures applicable in appellant's unit; (5) medical records, memoranda and other official documents in connection with the stabbing; (6) police reports and statements taken in connection with the stabbing.

The district court's order suggests that it thought Klingele could have found no set of facts that would have made out a claim. To determine whether discovery would have been fruitless, we look to the legal theories that might sustain the prisoner's claims.

### 1. *Eighth Amendment*

■ The district court correctly stated that under the eighth amendment, the exercise of professional judgment by prison officials that gives rise to injury to prisoners will not constitute cruel or unusual punishment unless it was the result of "deliberate indifference" to the safety of the inmates. Negligence alone is not enough. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.1985) (en banc). The court concluded that in light of Klingele's refusal to move to PCU or to provide the names of the inmates who were threatening him, the prison officials did not exhibit deliberate indifference. It rejected Klingele's eighth amendment claim.

This was error. The district court should not have entered summary judgment since Klingele satisfied his burden of justifying discovery by setting forth the particular facts that he expected to uncover through discovery, *see Mission Indians v. American Mgmt. & Amusement*, 824 F.2d 710, 716 (9th Cir.1987); *Hall*, 791 F.2d at 761, and identified specific facts tending to show that the evidence sought actually exists. *Visa Int'l Service v. Bankcard Holders*, 784 F.2d 1472, 1475 (9th Cir.1986). In his answer to appellees' interrogatories, appellant in three places stated that Isaacs admitted that Slaybaugh had instructed Isaacs to kill appellant, and that Slaybaugh was the nearest guard to Klingele when he was stabbed. Klingele added: "To further explain this conspiracy, I will be petitioning that the court take depositions on this matter."[1] Appellant also sought information that prison procedures were themselves inadequate to protect inmates, and that appellees knew they were inadequate or, alternatively, that the procedures were adequate but that appellees willfully or recklessly ignored them.

### 2. *Fourteenth Amendment*

■ The district court also ruled that appellant's substantive due process claim under the fourteenth amendment was barred by *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986) and *Daniels v. Williams*. In *Davidson*, a prisoner who had informed prison officials that he had been threatened was later attacked. The trial court found that the prison at most had been negligent. The Su-

---

1. Although Klingele, a pro se prisoner, might not have the means to take depositions, he plainly was entitled to propound interrogatories, request documents, and engage in other forms of discovery. His request for depositions at a minimum evinced his intention to pursue discovery.

preme Court found that "the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials." *Davidson,* 474 U.S. at 348, 106 S.Ct. at 671.

Relying on *Davidson,* the district court dismissed the case because it believed appellees' actions amounted to no more than negligence. It was wrong in doing so since appellant claimed far more than negligence and should have been given a chance to support his claim.

The court in *Davidson* cautioned that claims such as Klingele's should not be barred. It noted that Davidson's claim, "based on respondents' negligence, is quite different from one involving injuries caused by ... another prisoner where officials simply stood by and permitted the attack to proceed...." *Id.* 106 S.Ct. at 670–71.

*3. Conspiracy Claim*

■ The district court addressed appellant's conspiracy claim, but because it characterized it as a claim under 42 U.S.C. § 1985(3), rather than a claim under § 1983, rejected it on the grounds that a § 1985(3) claim must include an allegation of racial or class-based discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Bretz v. Kelman,* 773 F.2d 1026 (9th Cir.1985) (en banc).

Nothing in appellant's pleadings suggests that his conspiracy claim is limited to a claim under § 1985. His complaint offered a disordered array of facts and legal citations, asserting claims under several of the civil rights statutes. The "Statement of Claim" in his complaint alleged that the appellees "did conspire together with each other to use their offices to deny Plaintiff adequate care and protection while being in their custody," but specified no particular statute. Elsewhere, in answers to appellees' interrogatories, he made more specific allegations that guard Slaybaugh had induced Isaacs to commit the assault.

While § 1985 speaks specifically to conspiracy claims, since it requires an allega-

tion of racial or class animus, it is more plausible that appellant was alleging a conspiracy under § 1983. A pro se complaint, "however inartfully pleaded," is held to "less stringent standards than formal pleadings drafted by lawyers," and can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). We have allowed a pro se plaintiff pleading only under § 1983 to proceed under § 1985, noting our "obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman,* 773 F.2d at 1027 n. 1; *see also Christensen v. C.I.R.,* 786 F.2d 1382, 1384–85 (9th Cir. 1986).

Reading Klingele's complaint liberally we find that he has alleged a conspiracy claim under § 1983.

## CONCLUSION

A nonmoving party may defeat summary judgment by demonstrating a genuine issue of material fact through, among other means, depositions and answers to interrogatories. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). Appellant's complaint supplemented by his answers to interrogatories alleged a conspiracy to deprive him of his eighth and fourteenth amendment rights. Through depositions, he might have been able to bolster his claim. It was, therefore, an abuse of discretion for the district court to grant summary judgment before permitting discovery.

The district court failed to advise appellant of the requirements of Rule 56, prematurely cut off discovery, and entered summary judgment while material issues remained in dispute. We reverse the order and reinstate the case so Klingele may proceed with discovery.

**REVERSED and REMANDED.**